UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:20-CV-00073-HBB

TINA BURCH                                                                                                    PLAINTIFF

VS.

ANDREW SAUL, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Tina Burch ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  Both the Plaintiff (DN 15) and Defendant (DN 21) have filed a Fact and Law Summary.  For the reasons that follow, the final decision of the Commissioner is **AFFIRMED,** and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11).  By Order entered October 20, 2020 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.  No such request was filed.

### FINDINGS OF FACT

On August 5, 2017, Plaintiff protectively filed an application for Disability Insurance Benefits (Tr. 18, 170-72,173-74).  Plaintiff alleged that she became disabled on July 20, 2017, because of Granulomatosis with polyangiitis, Chronic Uveitis, Chronic Desquamative

Inflammatory Vaginitis, Chronic and Debilitating Fatigue, Anxiety, Depression, Joints-flu like symptoms, and Neuropathy in feet (Tr. 18, 69, 83, 193). The state agency denied the application at the initial level on October 27, 2017 and at the reconsideration level on February 5, 2018 (Tr. 18, 68-81, 82-102). On February 12, 2018, Plaintiff then filed a request for hearing by an Administrative Law Judge (Tr. 18, 118-19).

Administrative Law Judge Jennifer B. Thomas ("ALJ") conducted a video hearing from Nashville, Tennessee (Tr. 18, 40). Plaintiff and her counsel, Christopher Rhoades, participated from Owensboro, Kentucky (Id.). Lynn A. Jones, an impartial vocational expert, testified during the hearing (Id.).

In a decision dated April 16, 2019, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 18-29). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged onset date (Tr. 20). At the second step, the ALJ determined that Plaintiff has the following severe impairments: pulmonary disorder; granulomatosis with polyangiitis; migraine headaches; neuropathy; depression; and anxiety (Tr. 21). The ALJ also determined that Plaintiff has been diagnosed with chronic vaginitis, desquamative inflammatory vaginitis, and vaginal atrophy (Id.). The ALJ explained that while she was "not persuaded the medical records support an ongoing, significant limitation connected to this condition, the sedentary exertion outlined below nonetheless accommodates the claimant's complaints in this regard by limiting her walking" (Id.).

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work except that Plaintiff should never climb ladders/ropes/scaffolds but may occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl; she can have occasional exposure to extreme cold and extreme heat, vibration, fumes, odors, dusts, gases, and poor ventilation; she should avoid hazards such as moving, mechanical parts and unprotected heights; she can understand, remember, and carry out simple, routine tasks requiring two-hour periods of concentration, persistence and pace throughout an eight-hour day; she can frequently interact with coworkers and supervisors and occasionally interact with the public; and she should avoid production rate work (Tr. 22). The ALJ relied on testimony from the vocational expert to find that Plaintiff is unable to perform any of her past relevant work (Tr. 26).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 27-28). The ALJ found that prior to November 9, 2018, Plaintiff was not disabled because she could perform a significant number of jobs that exist in the national economy (Id.). The ALJ found that beginning on November 9, 2018, the date that Plaintiff's age category changed to an individual closely approaching advanced age, she became disabled because there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform (Id.).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 167-69). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

> 5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied in part and granted in part Plaintiff's claim at the fifth step.

## Finding No. 4

1. Arguments of the Parties

Plaintiff contends that the ALJ committed "clear error" when she found that Plaintiff's disabilities did not meet Listing 14.03 during the "relevant time period" (DN 15-1 PageID # 2855-56). Plaintiff contends that a September 27, 2017 oral statement from her treating rheumatologist Dr. Sims demonstrates that her granulomatosis with polyangiitis ("GPA") meets the criteria for Listing 14.00 (Id. citing Tr. 594-99). Additionally, Plaintiff accuses the ALJ of failing to explain the basis for her conclusion (Id.).

Defendant responds by pointing out that "clear error" is not the applicable standard (DN 21 PageID # 2883-84). Next, Defendant asserts that contrary to Plaintiff's assertion, the ALJ addressed Plaintiff's GPA in detail throughout the decision (Id. at PageID # 2884-89 citing Tr. 21, 23-24). Further, Defendant points out that Dr. Sims' statement fails to satisfy the two constitutional systems requirement in the second prong of the Listing (Id. at PageID # 2887-88, citing 20 C.F.R. Pt. 404, Subpt. P, App 1, § 14.02(A)(2) ("severe fatigue, fever, malaise, or involuntary weight loss.")). Defendant explains while Dr. Sims indicated the severe fatigue is related to the GPA, he described the malaise as a side effect of the Rituxan infusions (Id.). Defendant also points out that the state agency physician, Dr. P. Saranga, concluded Plaintiff did not meet or medically equal Listing 14.03 after reviewing Dr. Sims' opinion (Id. at PageID # 2889).

2. Discussion

The Court will begin with Plaintiff's use of the "clear error" standard in her argument (*see* DN 15-1 PageID # 2855-56).   The "clear error" standard applies when a district judge reviews a magistrate judge's report and recommendation to which no timely objection has been filed.  *See* Fed. R. Civ. P. 72 Advisory Committee Note Subdivision (b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."); Mitchum v. Saul, No. 2:19-CV-02533-JPM-dkv, 2020 WL 1493482, at *1 (W.D. Tenn. March 27, 2020); Samona v. Comm'r of Soc. Sec., No. 15-CV-11713, 2018 WL 2159893, at *1 (E.D. Mich. May 10, 2018).   The "clear error" standard also applies when a party moves a district court to alter or amend its judgment under Fed. R. Civ. P. 59(e). *See* Moore v Berryhill, No. 4:17-CV-00091-HBB, 2018 WL 2197974, at *1 (W.D. Ky. May 14, 2018).   Neither situation exists here.   Instead, Plaintiff is utilizing the "clear error" standard in her challenge of the final decision of the Commissioner.   But the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied.   *See* 42 U.S.C. § 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)).   Thus, the Court declines Plaintiff's invitation to apply the "clear error" standard.

At the third step, a claimant will be found disabled if her impairment meets or medically equals one of the listings in the Listing of Impairments.   20 C.F.R. § 404.1520(a)(4)(iii); Turner v. Comm'r of Soc. Sec., 381 F. App'x 488, 491 (6th Cir. 2010).   The Listing of Impairments, set forth in Appendix 1 to Subpart P of the regulations, describes impairments the Social Security

Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c)(3). A claimant must satisfy all the criteria to "meet" the listing and be deemed disabled. See 20 C.F.R. § 404.1525(c)(3) and (d); Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984). However, a claimant is also deemed disabled if her impairment is the medical equivalent of a listing. 20 C.F.R. § 404.1520(a)(4)(iii); Turner, 381 F. Appx. at 491. Medical equivalence means "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a). "An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." Reynolds v. Comm'r Soc. Sec., 424 F. App'x 411, 415 (6th Cir. 2011). Additionally, the administrative law judge looks to the opinions of the state agency medical advisors and/or the opinion of a testifying medical expert for guidance on the issue of whether the claimant's impairment is the medical equivalent of a listing. See 20 C.F.R. § 404.1526(c) and (d); Social Security Ruling 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017); Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1186 (5th Cir. 1986).

Plaintiff has GPA, formerly known as Wegener's Granulomatosis, an autoimmune disease that attacks her blood vessels (DN 15-1 PageID # 2855). Listing 14.00 is entitled "Immune System Disorders." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.00. Autoimmune disorders (14.00D) is a category of immune system disorders addressed under this Listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.00A. "Autoimmune disorders are caused by dysfunctional immune responses

directed against the body's own tissues, resulting in chronic, multisystem impairments that differ in clinical manifestations, course, and outcome." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.00A2. Autoimmune disorders involving an inflammation of blood vessels, like Wegener's Granulomatosis or Granulomatosis Polyangiitis, are classified as "systemic vasculitis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.00D2. An angiography or tissue biopsy is necessary to confirm a diagnosis of systemic vasculitis. Id.

Listing 14.03 sets forth the criteria for determining whether Plaintiff's systemic vasculitis is severe enough to prevent her from doing any gainful activity, regardless of her age, education, or work experience. 20 C.F.R. § 404.1525(a) and (b). The Listing reads as follows:

> 14.03 Systemic vasculitis. As described in 14.00D2. With:
>
> A. Involvement of two or more organs/body systems, with:
>
> 1. One of the organs/body systems involved to at least a moderate level of severity; and
>
> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
>
> or
>
> B. Repeated manifestations of systemic vasculitis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.
>
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 14.03.

9

Plaintiff relies on the oral statement of her treating rheumatologist, Dr. Sims, to satisfy the criteria in Listing 14.03A.[1]  Defendant acknowledges that Dr. Sims confirmed the GPA diagnosis through a tissue biopsy (Id.).  But Defendant questions whether Dr. Sims' statement satisfies the remaining criteria in Listing 14.03.

Defendant accepts that Dr. Sims has indicated Plaintiff has Granulomatosis Polyangiitis with involvement of her eye, lung, and upper airway (*see* Tr. 596).  If Dr. Sims has indicated one of the above three identified organs/body systems is at "a moderate level of severity," which Defendant does not concede, then the statement would appear to satisfy the first prong of Listing 14.03A.  But this issue is complicated by the fact that Listing 14.00 does not provide any guidance concerning what constitutes "a moderate level of severity."  Notwithstanding, there are several important statements by Dr. Sims that are pertinent to assessing the severity of three identified organs/body systems.  For example, Dr. Sims commented that the Rituxlmab infusions were not successful in preventing the advancement of the chronic recurrent uveitis in Plaintiff's eye and the chronic recurrent subglottic tracheal stenosis (Tr. 596).[2]  Dr. Sims remarked that Plaintiff's chronic recurrent uveitis is made worse and more painful by exposure to brighter light such as fluorescent office lighting or being outside on a sunny day (Tr. 598).  Further, Dr. Sims indicated that as a result of the chronic subglottic tracheal stenosis, Plaintiff experiences a progressively impaired ability to breath, and she must undergo laser surgical procedures to open up her airway (Tr. 597).  The above information regarding Plaintiff's chronic recurrent uveitis in the eye and

---

1 Dr. Sims provided the oral statement on September 27, 2017 (Tr. 595-99).

2 Moreover, Defendant ignores Dr. Sims' comments indicating when the Rituxlmab infusion is given, it takes six to eight hours to complete, the patient has to take a big dose of corticosteroid which is hard to tolerate, and a second infusion is performed two weeks later (Tr. 596).

chronic recurrent subglottic tracheal stenosis suggests that both organs/body systems might involve "at least a moderate level of severity."

Moving to the second prong of Listing 14.03, it requires at least two of the following constitutional symptoms or signs: severe fatigue,[3] fever, malaise,[4] or involuntary weight loss. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 14.03A2. Defendant argues that while Dr. Sims indicated Plaintiff has severe fatigue, he has not identified at least one other constitutional symptom or sign.[5] By contrast, Plaintiff asserts that Dr. Sims reported severe fatigue and "malaise" during the course of treatment for GPA.

Dr. Sims indicated that despite treatment Plaintiff experienced certain symptoms that waxed and waned such as "severe fatigue, shortness of breath, joint pain, and other symptoms of that nature" (Tr. 596). He also mentioned that Plaintiff stopped working because over time the growing symptoms of fatigue and the other manifestations of GPA made it increasingly difficult to do her job (Id.). Thus, Dr. Sims connected only one constitutional symptom or sign—severe fatigue—to Plaintiff's GPA. While Dr. Sims talked about "malaise," it was in the context of explaining the side effects of the Rituxlmab infusions (Tr. 596). Thus, contrary to Plaintiff's assertion, Dr. Sims' statement does not support a finding that Plaintiff's GPA meets Listing 14.03.

The ALJ's analysis regarding Listing 14.03 reads as follows:

> The claimant does not have systemic vasculitis with involvement of two or more organs/body systems with at least one of the

---

[3] Listing 14.00 indicates that "[s]evere fatigue means a frequent sense of exhaustion that results in significantly reduced physical activity or mental function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 14.00C2.

[4] The Listing also explains that "[m]alaise means frequent feelings of illness, bodily discomfort, or lack of well-being that result in significantly reduced physical activity or mental function." Id.

[5] Defendant acknowledges that Dr. Sims mentioned severe fatigue, shortness of breath, joint pain and other symptoms of that nature (Tr. 596). Defendant points out that while severe fatigue is identified in Listing 14.03A, the other symptoms are not.

11

> organs/body systems involved to at least a moderate level of severity and two of the constitutional symptoms or signs such as severe fatigue, fever, malaise, **or** involuntary weight loss, or repeated manifestations with a marked level of limitations of activities of daily living, limitation in maintaining social functioning, or limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

(Tr. 21) (emphasis added). Essentially, the ALJ concluded that the evidence in the record did not satisfy the criteria to parts A or B of Listing 14.03. While the above explanation may be somewhat brief, the ALJ did provide a more thorough examination of the evidence concerning Plaintiff's GPA at step four (Tr. 23-25). The evidence that the ALJ discussed included Plaintiff's testimony, diagnostic test results, observations in the treatment notes, prescribed medications, Plaintiff's daily activities, the medical opinions from the state agency medical consultants, Dr. Sims's statement, and Dr. Brey's assessment[6] (Id.). The ALJ's evaluation of Dr. Sims statement provides more insight into the conclusion that Plaintiff does not satisfy the criteria to parts A or B of Listing 14.03 (Tr. 25). Thus, there is no merit to Plaintiff's assertion that the ALJ failed to provide an adequate explanation why Plaintiff did not meet or medically equal Listing 14.03. Furthermore, the ALJ's findings are supported by substantial evidence in the record and comport with applicable law.

Finding No. 5

1. Arguments of the Parties

Plaintiff utilizes three arguments to challenge the RFC set forth in Finding No. 5 (DN 15-1 PageID # 2856-61). First, Plaintiff claims the ALJ committed "clear error" in finding that she is capable of performing sedentary work despite medical evidence and her testimony portraying

---

6 Dr. Brey took over Plaintiff's care after Dr. Sims retired (Tr. 25).

disabling limitations from the GPA and the immunosuppression treatments she received for that condition (Id. at PageID # 2856-58). Next, Plaintiff asserts that the ALJ should have given "great weight" to the opinions from her treating rheumatologists, Drs. Sims and Brey, and treating psychiatric nurse practitioner Amber Survant (Id. at PageID # 2858-60, citing Tr. 594-99, 2763-68, 2769-74). Additionally, Plaintiff contends that the ALJ's findings are not supported by substantial evidence and do not comport with applicable law because she failed to articulate sufficient reasons for her findings (Id.). Plaintiff also alleges that the ALJ committed "clear error" in not accepting the opinion of the consulting examiner Ms. Walpert (Id. at PageID # 2860-61, citing Tr. 706-12).

In response, Defendant argues the RFC limiting Plaintiff to a reduced range of sedentary work is supported by substantial evidence (DN 21 PageID # 2890-92). Defendant asserts that the ALJ properly assessed the medical opinions from Drs. Sims and Brey, Ms. Survant, and the consultative psychological examiner Ms. Walpert under the new regulations and substantial evidence supports her findings (Id. at PageID # 2892-98).

2. Discussion

The Court will begin with Plaintiff's use of the "clear error" standard in her argument (*see* DN 15-1 PageID # 2856-61). For the reasons set forth above, the Court declines Plaintiff's invitation to apply the "clear error" standard. Instead, the Court will determine whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence" and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 374 (6th Cir. 2013); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011)).

The RFC finding is the administrative law judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c). The administrative law judge makes this determination based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). Thus, in making the RFC finding the administrative law judge must necessarily evaluate the persuasiveness of the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

Notably, Plaintiff has mistakenly relied on the rules in 20 C.F.R. § 404.1527 and related case law in her challenge to the ALJ's evaluation of medical opinions from Drs. Sims and Brey, Ms. Survant, and Ms. Walpert (*see* DN 15-1 PageID # 2858-61). The new regulations for evaluating medical opinions are applicable to Plaintiff's case because she filed her application after March 27, 2017 (Tr. 18, 170-72,173-74). *See* 20 C.F.R. § 404.1520c.

The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[7] in the record, even if it comes from a treating medical source. 20 C.F.R. § 404.1520c(a).[8] Instead, administrative law judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. § 404.1520c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other

---

7 At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings." 20 C.F.R. § 404.1513a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation. 20 C.F.R. § 404.1513a(b)(1).

8 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 404.1527(c)(2).

14

factors. 20 C.F.R. § 404.1520c(c)(1)-(5).[9] Of these five factors, the two most important are supportability and consistency. 20 C.F.R. § 404.1520c(a) and (b)(2). Further, the regulation requires that administrative law judges explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2). Notably, under the regulations administrative law judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 404.1520c(b)(2).[10]

The ALJ's evaluation of the opinions of Drs. Sims and Brey reads as follows:

> Gerald Sims, M.D., provided a statement on behalf of the claimant. He had seen the claimant in relation to his rheumatology practice and treatment of the claimant's granulomatosis with polyangiitis. He stated that the claimant had involvement with the eye leading to uveitis, lung involvement, and upper airway involvement but treatment had been successful in preventing advancement of major organ system problems. He stated that typical of the disease were waxing and waning symptoms such as fatigue, shortness of breath, and joint pain. He also stated that Rituximab was difficult to take, as the infusions took 6-8 hours, and the patient had to have 2 of them weeks apart. He reported that the process generally resulted in feeling bad or having generalized malaise and could be incapacitating for some people. He noted he had observed the claimant's reports of increasing symptoms of fatigue and other manifestations of the claimant's condition.
>
> Overall, Dr. Sims opined that the claimant would not be able to stand or walk for a period of time exceeding 2-3 hours in a day on a consistent basis when her symptoms were being exhibited. He stated that fatigue could prevent prolonged sitting and cause her to be off task more than 30% of the time when the claimant's symptoms were being exhibited. Overall, he stated the claimant would not be

---

9 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 404.1520c(c)(3)(i)-(v).

10 An administrative law judge will articulate how she considered the other factors in paragraphs (c)(3) through (c)(5) of the regulation when the administrative law judge finds that two or more medical opinions about the same issue are both equally well supported and consistent with the record but are not exactly the same. 20 C.F.R. § 404.1520c(b)(3).

> able to work full time. (Ex. 18F). The undersigned notes that this conclusory statement is an issue reserved to the Commissioner and provides no valuable information.
>
> David Brey, M.D., took over the claimant's care after Dr. Sims's retirement. (Ex. 47F). He reported she continued to struggle with multiple symptoms including fatigue, muscle weakness, vision abnormalities, breathing difficulties, headaches, sleep disturbance, and neuropathy in her lower extremities. He agreed with Dr. Sims's earlier assessment. (Ex. 47F).
>
> The undersigned is somewhat persuaded by the opinions of Drs. Sims and Brey. The residual functional capacity above accommodates the claimant's need for a reduced exertional capacity and avoidance of factors that could irritate her condition. It provides for no more than 2 hours of standing/walking in an 8-hour day. However, the undersigned also notes some waxing and waning of the claimant's symptoms and the treatment that she incurs would not prevent the performance of work activity on a regular and consistent basis. To this end, as further described above, the undersigned is more persuaded the residual functional capacity above is appropriate.

(Tr. 25). The Court has reviewed the record and concludes that the ALJ's persuasiveness findings are supported by substantial evidence in the record. Further, the persuasiveness findings comport with applicable law because the ALJ explained how she considered the supportability and consistency factors in determining the persuasiveness of each medical source's opinion.

Next, the ALJ's evaluation of Ms. Walpert's opinion reads as follows:

> Ms. Walpert reported the claimant as capable of understanding the tasks and instructions given during the examination and remaining focused and on task. She stated the claimant was capable of performing simple and repetitive tasks. However, she reported the claimant's mental illness symptoms were causing marked impairment in her ability to tolerate the stress and pressures of a day-to-day employment setting as well as marked impairment in her daily living skills and social abilities. (Ex. 26F). The undersigned is not persuaded by this conclusory opinion, as it is not supported by Ms. Walpert's own examination or the claimant's other records or activities of daily living. Ms. Walpert's evaluation contained

> statements that the claimant performed adequately on testing, such that she reported the claimant remained focused and on task. Her conclusions, then, are not supported.

(Tr. 26). The Court has reviewed the record and concludes that the ALJ's persuasiveness finding is supported by substantial evidence in the record. Further, the persuasiveness finding comports with applicable law because the ALJ explained how she considered the supportability and consistency factors in determining the persuasiveness of this medical source's opinion.

The ALJ's evaluation of Ms. Survant's opinion reads as follows:

> Amber Survant, APRN, has treated the claimant for depression and anxiety. Ms. Survant stated the claimant's conditions intensified and worsened following the claimant's autoimmune diagnosis and having to quit her job. She opined the claimant had moderate to marked limitations with concentration and understanding, remembering or applying information. She stated that on some days, but not always, the claimant would have a marked limitation with interacting with others. (Ex. 48F). The undersigned is not wholly persuaded by this opinion. While the undersigned finds the claimant to have moderate limitations with occupational activities, her activities such as performing some household chores and activities, driving, and interacting with family do not support the marked limitations Ms. Survant has assessed.

(Id.). The Court has reviewed the record and concludes that the ALJ's persuasiveness finding is supported by substantial evidence in the record. Further, the persuasiveness finding comports with applicable law because the ALJ explained how she considered the supportability and consistency factors in determining the persuasiveness of this medical source's opinion.

In assessing Plaintiff's RFC, the ALJ provided a thorough examination of the evidence including Plaintiff's testimony, diagnostic test results, observations in the treatment notes, prescribed medications, Plaintiff's daily activities, as well as the medical opinions (Tr. 23-26). Plaintiff's statement that she is experiencing pain or other symptoms will not, taken alone, establish

that she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. § 404.1529(a). In determining whether she suffers from debilitating pain and other symptoms, the two-part test set forth in <u>Duncan v. Sec'y of Health & Human Servs.</u>, 801 F.2d 847, 853 (6th Cir. 1986), applies. First the ALJ must examine whether there is objective medical evidence of an underlying medical condition. If there is, then the ALJ must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." <u>Id.</u> Because the reported pain and other symptoms suggested impairments of greater severity than could be shown by objective medical evidence, the ALJ appropriately considered other information and factors that may be relevant to the pain and other symptoms alleged. 20 C.F.R. § 404.1529(c)(3).

For example, the ALJ appropriately considered Plaintiff's level of daily activity (Tr. 23-26). 20 C.F.R. § 404.1529(c)(3)(i); <u>Bogle v. Sullivan</u>, 998 F.2d 342, 348 (6th Cir. 1993); <u>Blacha v. Sec'y of Health & Human Servs.</u>, 927 F.2d 228, 231 (6th Cir. 1990). The ALJ also noted inconsistencies in the evidence and the extent to which there were conflicts between Plaintiff's statements and the rest of the evidence (<u>Id.</u>). 20 C.F.R. § 404.1529(c)(4). The ALJ also considered the medications used to address Plaintiff's health conditions (<u>Id.</u>). 20 C.F.R. § 404.1529(c)(3)(iv). The ALJ found from the medical record and Plaintiff's testimony that she does not suffer pain and other symptoms to the extent Plaintiff testified. The undersigned concludes that the ALJ's findings regarding Plaintiff's pain and other symptoms are supported by substantial evidence and fully comport with applicable law.

In sum, Plaintiff is not entitled to relief on her three arguments challenging the RFC set forth in Finding No. 5.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. (Id.). After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief regarding her challenge.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

June 15, 2021

H. Brent Brennenstuhl
United States Magistrate Judge

Copies: Counsel